UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS CM ENTERPRISES, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>WINGSTOP FRANCHISING, LLC,<br><br>    Defendant.<br><br>_____<br><br>WINGSTOP FRANCHISING, LLC,<br><br>    Counterclaimant,<br><br>v.<br><br>MORRIS CM ENTERPRISES, LLC,<br><br>    Counter-Defendant. | No. 2:19-CV-02306-KJM-CKD<br><br>FINDINGS AND RECOMMENDATIONS |

Before the court is defendant and counterclaimant Wingstop Franchising LLC's ("Wingstop" or "counterclaimant") motion for default judgment against plaintiff and counter-defendant Morris CM Enterprise, LLC ("Morris CM" or "counter-defendant"). (ECF No. 30.) Morris CM failed to file an opposition to the motion for default judgment in accordance with Local Rule 230(c). Morris CM was given additional time to respond and was advised that the

1

failure to respond may result in a recommendation that default judgment be entered against it. (ECF No. 34.) On April 29, 2020, Morris CM filed an opposition to the motion for default judgment. (ECF No. 36.) On May 5, 2020, Wingstop timely filed a reply. (ECF No. 37.) The undersigned has fully considered the briefs and record in this case and, good cause appearing, finds as follows:

## I.   BACKGROUND

### A.   Factual Background

In 2008, Morris CM entered into a franchise agreement with Wingstop Restaurants Inc., a national restaurant franchise specializing in chicken wings.[1]  (ECF No. 1 ¶ 6.)  The franchise agreement granted Morris CM the right to operate a Wingstop restaurant at 3541 N. Freeway Blvd., Suite 115, Sacramento, California.  (ECF No. 5 ¶ 20.)  The parties renewed their agreement under a renewal rider on December 6, 2017.  (Id.)  Michael Morris, the principal officer of Morris CM, was a guarantor of Morris CM's obligations under the franchise agreement.  (Id. ¶ 6.)

Wingstop owns a variety of trademarks and copyrights used to denote its restaurants.  (Id. ¶¶ 10-19.)  In the franchise agreement and subsequent renewal, Wingstop granted Morris CM a license to use various components of Wingstop's intellectual property.  (Id. ¶¶ 20, 24.)  Wingstop granted Morris CM the use of several federally registered trademarks to distinguish its restaurant.  (Id. ¶ 12.)  Wingstop also furnished Morris CM with a license to use copyright protected operations and advertising materials and protected trade secrets in operating its restaurant.

Wingstop alleges Morris CM agreed to discontinue use of all Wingstop intellectual property on termination of the franchise agreement.  (Id. ¶ 25.)  The Franchise Agreement states, in relevant part:

/////

/////

/////

---

[1] Wingstop Restaurants Inc. subsequently assigned its interest in the franchise agreement to Wingstop Franchising LLC, the counterclaimant in this action. (ECF No. 5 ¶ 23.)

> Upon the expiration or termination of the franchise, Franchisee must immediately discontinue all further uses of the Marks and Copyrighted Materials and take appropriate action to remove the Marks from the premises in which the Restaurant is located, to cancel any advertising relating to Franchisee's use of the Marks or the Copyrighted Materials, including yellow pages listings, and to cancel or withdraw any assumed or fictitious name filings covering Franchisee's use of Company's trade name. Franchisee acknowledges and agrees that failure or refusal to comply fully with these requirements will constitute willful trademark and copyright infringement.

(ECF No. 5-2 at 32.)

Morris CM agreed it would take these remedial steps within seven days of any termination of the franchise. (ECF No. 5 ¶ 29.) If it did not, Wingstop would be entitled to injunctive relief without the necessity of posting a bond. (Id.)

On April 25, 2019, Wingstop received a notice from the California Department of Tax and Fee Administration (CDTFA) that Morris CM's seller's permit had been suspended for failure to pay sales tax. (ECF No. 5 ¶ 34.) Wingstop then sent notices of default to Morris CM, and Morris CM failed to cure the default. (ECF No. 5 ¶ 36.)

On October 11, 2019, Wingstop notified Morris CM and Michael Morris ("Morris Parties") that the franchise agreement was terminated based on the failure to cure the defaults. (ECF No. 5 ¶ 37.) The notification letter told the Morris Parties to comply immediately with the post-termination obligation to remove Wingstop trade dress from the restaurant and discontinue use of Wingstop's trademarks and other intellectual property. (Id.)

Wingstop alleges Morris CM continues to use the Wingstop marks, the Wingstop System, display Wingstop trade dress, and hold the restaurant out as a Wingstop franchisee. (ECF No. 5 ¶ 38.) Morris CM has taken none of the agreed-upon steps to remove trade dress and marks identifying the restaurant as a Wingstop franchisee. (Id. ¶ 45.) As a result, Wingstop alleges Morris CM and Michael Morris have violated the Lanham Act by continuing to use Wingstop's intellectual property after termination of the franchise, and that the violations are causing Wingstop to suffer irreparable harm necessitating injunctive relief. (Id. ¶¶ 50-52, 55-57.)

/////

B.     Procedural History

On November 15, 2019, Wingstop removed from Sacramento County Superior Court the suit filed there by Morris CM for wrongful termination of Morris CM's franchise, breach of the covenant of good faith and fair dealing, and interference with economic relations. (ECF No. 1.) The same day, Wingstop counterclaimed for violations of the Lanham Act and breach of contract, adding Michael Morris as a counter-defendant. (Id.) On November 19, 2019, Wingstop moved for a preliminary injunction. (ECF No. 8.) On December 6, 2019, Wingstop filed a motion to stay the claims asserted by Morris CM on the basis that they were subject to a binding arbitration agreement. (ECF No. 9.)

Neither Morris CM nor Michael Morris filed an answer to the Counterclaim, nor did they file an opposition to the motion for preliminary injunction. On January 3, 2020, the court granted Wingstop's request for a preliminary injunction. (ECF No. 17.) That same day, Morris CM appeared in the action by filing an opposition to Wingstop's motion to stay. (ECF No. 16.)

On January 6, 2020, the clerk entered default against the counter-defendants for failing to answer the Counterclaim. (ECF No. 18).

On January 17, 2020, the court held a hearing on Wingstop's motion to stay—at which counsel for Morris CM and Wingstop appeared—and took the matter under submission. (ECF No. 20.)

In March 2020, Wingstop voluntarily dismissed Michael Morris as a counter-defendant, (ECF Nos. 25, 27), and moved for entry of default judgment against Morris CM. (ECF No. 30.) Morris CM did not file an opposition to the motion for default judgment. Preferring to resolve the action on the merits if possible, the court provided Morris CM with an additional opportunity to respond. (ECF No. 34.) Morris CM then filed an opposition, to which Wingstop replied. (ECF Nos. 36, 37.) The court now considers whether to grant the motion for default judgment.

/////
/////
/////
/////

4

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. See Fed. R. Civ. P. 55(a). However, "[a] defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citing Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986)). Instead, the decision to grant or deny an application for default judgment lies within the district court's sound discretion. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980). In making this determination, the court considers the seven Eitel factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). Default judgments are ordinarily disfavored. Id. at 1472.

As a general rule, once default is entered, well-pleaded factual allegations in the operative complaint are taken as true, except for those allegations relating to damages. TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam) (citing Geddes v. United Fin. Group, 559 F.2d 557, 560 (9th Cir. 1977) (per curiam)); accord Fair Housing of Marin v. Combs, 285 F.3d 899, 906 (9th Cir. 2002). In addition, although well-pleaded allegations in the complaint are admitted by a defendant's failure to answer, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992) (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)); accord DIRECTV, Inc. v. Hoa Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (stating that a defendant does not admit facts that are not well-pled or conclusions of law); Abney v. Alameida, 334 F. Supp. 2d 1221, 1235 (S.D. Cal. 2004) ("[A] default judgment may not be entered on a legally insufficient claim.") A party's default does not establish the amount of damages. Geddes, 559 F.2d at 560.

### III. DISCUSSION

    A. Mootness

In its opposition to the motion for default judgment, Morris CM argues that the counterclaim is moot because Morris CM has permanently ceased the conduct that the counterclaim seeks to enjoin. (ECF No. 36 at 3.) For this reason, Morris CM asks the court to deny the motion for default judgment. (Id.)

The Supreme Court has stated that the standard "for determining whether a case has been mooted by [a party's] voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 189 (2000) (citations omitted). The "heavy burden" of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness. (Id.)

Consistent with this authority, lower courts have issued permanent injunctions in trademark infringement cases even when a franchisee has ceased its infringing conduct. See, e.g., Kissinger, Inc. v. Singh, 304 F. Supp. 2d 944, 949 (W.D. Mich. 2003) (although former franchisee was "not currently operating a Baguette de France restaurant, a permanent injunction will ensure that he does not do so in the future"); see also Mister Softee, Inc. v. Amanollahi, No. 2:14-cv-01687, 2016 WL 5745105, at *9 (D.N.J. Sept. 30, 2016) (former franchisee's "alleged compliance with the preliminary injunction is no defense to entry of a permanent one. A defendant cannot automatically moot a case simply by ending its unlawful conduct once sued. Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off.").

Here, Morris CM has not met its "heavy burden" to show that it will not use Wingstop's federally registered trademarks and proprietary systems in the future. Although Morris CM alleges it "has permanently ceased and desisted all operations as a Wingstop restaurant at Wingstop Natomas," (ECF No. 36 at 3), the record indicates that Michael Morris—Morris CM's sole manager and owner—is currently using the Wingstop name without authorization at another

restaurant at 7440 Laguna Blvd., Elk Grove, California. (ECF Nos. 37-1 at 32, 37-2 ¶ 2.) While this alleged unauthorized use may be by Michael Morris personally, rather than by Morris CM, Michael Morris' exclusive ability to control Morris CM raises questions over whether unauthorized use by Morris CM could recur. On this record, it is not "absolutely clear" that the challenged conduct cannot reasonably be expected to recur. Accordingly, Morris CM has not shown that the counterclaim is moot.

B. Appropriateness of the Entry of Default Judgment Under the Eitel Factors

Next, the court must decide whether entering a default judgment is appropriate under seven Eitel factors. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

1. *Factor One: Possibility of Prejudice to Counterclaimant*

The first Eitel factor considers whether Wingstop would suffer prejudice if default judgment is not entered. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Such potential prejudice to Wingstop would militate in favor of granting a default judgment. (Id.) Here, Wingstop would potentially face prejudice if the court did not enter a default judgment. Absent entry of a default judgment, Wingstop would be left without recourse against Morris CM. It will have no assurances that Morris CM will permanently cease the preliminarily enjoined conduct. Accordingly, the first Eitel factor favors the entry of a default judgment.

2. *Factors Two and Three: The Merits of Counterclaimant's Substantive Claims and the Sufficiency of the Complaint*

The court considers the merits of Wingstop's substantive claims and the sufficiency of the complaint together below because of the relatedness of the two inquiries. The court must evaluate whether the allegations in the counterclaim are sufficient to state a claim that supports the relief sought. See Danning, 572 F.2d at 1388; PepsiCo, Inc., 238 F. Supp. 2d at 1175. Wingstop asserts three counterclaims: (1) trademark infringement, (2) unfair competition, and (3) breach of contract. (ECF No. 5 at 10-12.)

A claim of trademark infringement under section 1114(1)(a) of the Lanham Act requires a trademark holder to demonstrate: (1) ownership of a valid mark (i.e., a protectable interest), and (2) that the alleged infringer's use of the mark "is likely to cause confusion, or to cause mistake,

7

or to deceive" consumers. Reno Air Racing Ass'n., Inc. v. McCord, 452 F.3d 1126, 1134 (9th Cir. 2006). Additionally, the "ultimate test for unfair competition is exactly the same as for trademark infringement: whether the public is likely to be deceived or confused by the similarity of the marks." Ketab Corp. v. Mesriani & Assocs., P.C., 734 F. App'x 401, 405 (9th Cir. 2018). In the counterclaim, Wingstop alleges that it owns the intellectual property at issue and that Morris CM's infringing use is likely to confuse consumers. (ECF No. 5 ¶¶ 10, 47-57.) Thus, the counterclaim sufficiently states a claim for copyright infringement.

The counterclaim sufficiently states a claim for breach of contract as well. The elements for a breach of contract action under California law are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. Buschman v. Anesthesia Bus. Consultants LLC, 42 F. Supp. 3d 1244, 1250 (N.D. Cal. 2014) (citing CDF Firefighters v. Maldonado, 158 Cal. App. 4th 1226, 1239 (2008)). The counterclaim alleges facts to support each of these elements. (ECF No. 5 ¶¶ 20, 46, 59-61.)

Finally, in the prior order granting Wingstop a preliminary injunction, the court found that Wingstop has a likelihood of success on the merits of its claims. (ECF No. 17.) Accordingly, these Eitel factors weigh in favor of entering default judgment.

### 3.   *Factor Four: The Sum of Money at Stake in the Action*

Under the fourth factor cited in Eitel, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." PepsiCo, Inc., 238 F. Supp. 2d at 1176-77; see also Philip Morris USA, Inc. v. Castworld Prods., Inc., 219 F.R.D. 494, 500 (C.D. Cal. 2003). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

Here, Wingstop is not seeking monetary damages as part of its default judgment. (ECF No. 30 at 5.) It is seeking only injunctive relief. (Id.) Courts have found that the "sum-at-stake" factor favors granting default judgment when a plaintiff is seeking only injunctive relief. See PepsiCo, Inc., 238 F. Supp. 2d at 1177. Accordingly, this factor also weighs in favor of granting

8

default judgment.

           4.      *Factor Five: The Possibility of a Dispute Concerning Material Facts*

Once the clerk enters default, the court may assume the truth of well-pleaded facts in the complaint (except as to damages). Thus, there is no likelihood that any dispute of material fact exists. See, e.g., Elektra Entm't Group Inc. v. Crawford, 226 F.R.D. 388, 393 (C.D. Cal. 2005); accord Philip Morris USA, Inc., 219 F.R.D. at 500; PepsiCo, Inc., 238 F. Supp. 2d at 1177. As such, the fifth Eitel factor favors a default judgment.

           5.      *Factor Six: Whether the Default Was Due to Excusable Neglect*

The court considers whether Morris CM's default was due to excusable neglect. The record suggests it was not. Despite being served with the counterclaim (ECF No. 5), the request for entry of default (ECF No. 15), and the instant motion for default judgment (ECF No. 30), Morris CM failed to answer the counterclaim. Moreover, after the clerk entered default, Morris CM has continued to participate in this litigation without attempting to cure the default. Even in its opposition to the present motion for default judgment, Morris CM does not express a desire to file an answer or otherwise defend itself. (Id.) Thus, there is no basis to find that the default resulted from excusable neglect. This Eitel factor favors the entry of a default judgment.

           6.      *Factor Seven: The Strong Policy Underlying the Federal Rules of Civil Procedure Favoring Decisions on the Merits*

"Cases should be decided upon their merits whenever reasonably possible." Eitel, 782 F.2d at 1472. But district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a party fails to defend itself in an action. PepsiCo, Inc., 238 F. Supp. 2d at 1177; see also Craigslist, Inc. v. Naturemarket, Inc., 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). Accordingly, although the court is cognizant of the policy in favor of decisions on the merits—and consistent with existing policy would prefer that this case be resolved on the merits—that policy does not, by itself, preclude the entry of default judgment.

In sum, upon consideration of the seven Eitel factors, the court concludes that Wingstop is entitled to a default judgment against Morris CM.

/////

9

C. <u>Permissibility of a Final Judgment as to the Counterclaim only</u>

By entering default judgment, the court will finally dispose of the counterclaim while the original complaint remains. Federal Rule of Civil Procedure 54(b) allows for this when there is no just reason to delay entry of judgment:

> When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b). As previously discussed, Morris CM has not indicated a desire to defend itself against the counterclaim, despite multiple opportunities to do so. Thus, the court finds that there is no just reason to delay entry of judgment as to the counterclaim.

D. <u>Terms of the Judgment to Be Entered</u>

Having found that Wingstop is entitled to entry of default judgment, the court must determine the terms of the judgment to be entered. Wingstop's motion for default judgment requests permanent injunctive relief, which was also requested in the counterclaim.[2]

The Lanham Act allows courts "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable," to prevent violations of its provisions. 15 U.S.C. § 1116(a). To obtain a permanent injunction, a plaintiff "must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).

Here, Wingstop has shown that it suffered an irreparable injury for which remedies available at law are inadequate. Furthermore, considering the balance of hardships between the

---

[2] Although the counterclaim also sought an award of monetary damages, attorney's fees, and court costs, such relief is not requested in the motion for default judgment; thus, the court does not evaluate whether such relief should be awarded. Moreover, in the proposed order submitted in conjunction with the motion for default judgment, Morris CM indicates that it "seeks injunctive relief only." (ECF No. 30-1.)

1   parties, a permanent injunction is warranted, because Morris CM would suffer no cognizable

2   hardship from merely being prevented from engaging in unlawful activity, whereas Wingstop's

3   trademarks may be further infringed upon if Morris CM's conduct is not enjoined.  Finally, the

4   public interest would be served by the enforcement of federal trademark and competition law.

5       Therefore, the court awards Wingstop its requested injunctive relief.

6   CONCLUSION

7       For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

8       1.    Wingstop's motion for default judgment (ECF No. 30) be GRANTED.

9       2.    Judgment on the counterclaim (ECF No. 5) be entered in Wingstop's favor and

10      against Morris CM.

11      3.    Morris CM Enterprise, LLC, its officers, agents, servants, employees, and

12      attorneys, and all persons in active concert or participation with any of them, be

13      permanently enjoined from:

14      a.    Using the following trademarks, or any trademark, service mark, logo or

15      trade name that is confusingly similar to any of the following trademarks,

16      in connection with operating any restaurant or for any other purpose:

17      i.    Wing-Stop (block letters) ®, registration no. 2,121,699, registered

18      December 15, 1997;

19      ii.    WING-STOP THE WING EXPERTS & Design (Original Logo) ®,

20      registration no. 2,422,672, registered January 23, 2001;

21      iii.    WING-STOP THE WING EXPERTS & Design (2014 Logo) ®,

22      registration no. 4,720,379, registered April 14, 2015;

23      iv.    WING-STOP THE WING EXPERTS & Design (in color) (2014

24      Logo) ®, registration no. 4,842,661, registered October 27, 2015;

25      v.    WINGSTOP (block letters) ®, registration no. 3,054,484, registered

26      January 31, 2006;

27      vi.    THE WING EXPERTS (block letters) ®, registration no.

28      3,087,485, registered May 2, 2006; and

                    vii.    THE BONELESS WING EXPERTS (block letters) ®, registration no. 3,185,734, registered December 19, 2006;

      b.    Using Wingstop's copyright protected material, including but not limited to:

            i.    Manuals used in the development, operation, and marketing activities of a Wingstop restaurant, including, but not limited to, the Operations Manual;

            ii.    Training materials;

            iii.    Restaurant plans and specifications;

            iv.    Menu board designs and graphics;

            v.    Product identification posters and photographs;

            vi.    Advertising and marketing materials;

            vii.    Labels, forms, and reports provided by Wingstop; and

            viii.    Computer software developed by Wingstop or as works for hire for use in the operation of the restaurants in connection with the operation of any restaurant or for any other purpose;

      c.    Using Wingstop's confidential and proprietary information (regarding, among other things, customers, marketing plans and information, prices, recipes, operating systems, suppliers, and similar information with respect to products or services of Wingstop) in connection with the operation of any restaurant or for any other purpose; and

      d.    Identifying their former Wingstop restaurant as a current or former Wingstop restaurant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

shall be served on all parties and filed with the court within fourteen (14) days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated:  May 29, 2020

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

17.2306.default_fr