1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS CM ENTERPRISES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>WINGSTOP FRANCHISING, LLC,<br><br>Defendants. | No.  2:19-cv-02306-KJM-CKD<br><br><br>ORDER |
| WINGSTOP FRANCHISING LLC,<br><br>Counter-Claimant,<br><br>v.<br><br>MORRIS CM ENTERPRISE, LLC and<br>MICHAEL MORRIS,<br><br><br>Counter-Defendants. | |

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

        On January 17, 2020, the court heard argument on the motion to stay the case pending arbitration brought by defendant and counterclaimant Wingstop Franchising LLC. Timothy Moppin appeared for Morris CM Enterprises LLC and specially appeared for Michael Morris, and Sean Newland appeared for Wingstop Franchising LLC.  Having considered the arguments of the parties and the applicable law, the court GRANTS the motion.

28

1          I.          FACTUAL BACKGROUND

2                    This case arises from a dispute between Wingstop Franchising LLC ("Wingstop"),

3    the eponymous franchisor of Wingstop restaurants, and its franchisee, Morris CM Enterprises,

4    LLC ("Morris CM").  Morris CM sued Wingstop in Sacramento County Superior Court on

5    October 19, 2019, for wrongful termination of its franchise, breach of the covenant of good faith

6    and fair dealing and interference with economic relations.  *Morris CM Enterprises LLC v.*

7    *Wingstop Franchising LLC,* Sac. Cty. Sup. Ct. Case No. 34-2019-00267448; Not. Removal, ECF

8    No. 1.  On November 15, 2019, Wingstop removed the suit to the Eastern District.  Not.

9    Removal.  The same day, Wingstop counterclaimed for violations of the Lanham Act and breach

10   of contract, adding Michael Morris, the principal officer of Morris CM as a counterdefendant.

11   ECF No. 5.  On November 19, 2019, Wingstop moved for a preliminary injunction requiring

12   Morris CM and Michael Morris to immediately discontinue use of Wingstop's brand and

13   intellectual property.  Mot. Prelim. Inj., ECF No. 8.  On January 3, 2020, the court granted the

14   motion and enjoined Morris CM and Michael Morris (collectively, "the Morris parties") from

15   using Wingstop's intellectual property or brand identification at the restaurant at issue.  Order for

16   Prelim. Inj., ECF No. 17.

17                   Wingstop now moves to stay the action, or in the alternative dismiss it on the basis

18   that the parties' franchise agreement makes their dispute subject to arbitration.  Mot. Stay, ECF

19   No. 9.  The franchise agreement contains an arbitration clause, which provides:

20                   Franchisee and Company agree that, except as provided below in this
21                   section 24(b), all controversies, disputes, or claims between Company and
                     its Affiliates, and their respective owners, officers, directors, agents and/or
22                   employees, and Franchisee (and/or its owners, guarantors, Affiliates and/or
                     employees) arising out of or related to:

23                   (1) this Agreement or any other agreement between Franchisee and
24                       Company;

25                   (2) Company's relationship with Franchisee;

26                   (3) the scope or validity of this Agreement or any other agreement between
                         Franchisee and Company (including the validity and scope of the
27                       arbitration obligation under this Section, which Company and
                         Franchisee acknowledge is to be determined by an arbitrator and not by
28                       a court); or

2

1    (4) any standard, specification, operation procedure, or rule;

2    must be submitted for binding arbitration, on demand of either party, to the
     AAA.

3

4   Franchise Agreement, ECF No. 9-3 at § 24(b).

5           There is an express exemption in the agreement for Wingstop to seek injunctive

6   relief from a court to enjoin the use of its intellectual property and branding:

7

8    Despite Franchisee's and Company's agreement to arbitrate provided
     above, Company and Franchisee agree that Company has no obligation
     whatsoever to arbitrate the following disputes: (i) disputes that arise under
9    or are related to the Lanham Act, as now or later amended; (ii) disputes that
     otherwise relate to the ownership or validity of any of the Marks;
10   (iii) disputes that involve enforcement of Company's intellectual property
     rights, including, but not limited to, Company's Confidential Information,
11   Trade Secrets, and Copyrighted Materials; or (iv) disputes related to
     Company's enforcement of the covenants not to compete in Section 19.
12   Company may enforce its rights in the disputes described in clauses (i)
     through (iv) exclusively in court.

13  Franchise Agreement at 43.

14          Morris CM contends the arbitration clause is unconscionable. Opp'n, ECF No. 16

15  at 4.  It asserts the arbitration provision is a contract of adhesion, claiming Morris CM and Mr.

16  Morris[1] "felt pressure to sign any agreements or documents that Defendant presented to them,"

17  and therefore the contract is procedurally unconscionable.  *Id.* at 5.  Morris CM alleges it "had no

18  opportunity to review the documents, including the arbitration provision, or to consult with an

19  attorney prior to signing them," and that the terms were "buried in pre-printed, standard forms."

20  *Id.*  Morris CM alleges Wingstop's failure to provide a copy of the American Arbitration

21  Association (AAA) rules at the signing of the franchise agreement makes the agreement

22  procedurally unconscionable.  *Id.* at 5–6.

23          Morris CM alleges the clause is also substantively unconscionable in that it

24  restricts Morris CM's right to discovery.  *Id.* at 6.  The clause restricts discovery in that it does not

25

26  _____

27  [1] Michael Morris has not yet appeared in the action.  As noted above, counsel for Morris CM
    Enterprises, Timothy Moppin, represented he was specially appearing for Michael Morris at
    hearing. The Opposition recites facts applicable to a natural person and do not specify any agent
28  or representative other than Michael Morris acting on behalf of Morris CM.

1    provide an express provision for discovery; it only incorporates by reference the AAA rules.  *Id.*

2    at 7.

3              Morris CM asserts as a second claimed ground for substantive unconscionability

4    the silence of the clause and the AAA rules regarding who bears the cost of arbitration.  *Id.*

5    Morris CM contends it is substantively unconscionable that the AAA rules "say nothing explicitly

6    about the exact amount of fees: instead parties, like Plaintiff, are left to their own devices to figure

7    out what their payment obligations would be if they are forced to fight their dispute in a forum to

8    which they never agreed."  *Id.*

9              Wingstop's reply asserts that in any event, the agreement expressly delegates

10   questions of validity and enforceability, including the issue of the enforceability of the arbitration

11   clause itself, to the arbitrator.  Reply at 1, ECF No. 19; *see also* Franchise Agreement § 24(b)(3).

12             Wingstop moves to stay the case under 9 U.S.C. § 3 pending arbitration of the

13   dispute.  Mot. to Stay, ECF No. 9.  Morris CM opposes, Opp'n, and Wingstop replied.  No

14   motion to compel arbitration is currently pending.  On March 12, 2020, Wingstop moved for a

15   default judgment against Morris CM for its intellectual property counterclaims.  Mot. for Default

16   J., ECF No. 30.  Magistrate Judge Carolyn K. Delaney recommended granting the motion for

17   default judgment on June 1, 2020.  F&Rs, ECF No. 38.

18             II.        LEGAL STANDARD

19             Under the Federal Arbitration Act (FAA), written agreements to arbitrate are

20   "valid, irrevocable, and enforceable."  9 U.S.C. § 2.  Under 9 U.S.C. § 3, the court must stay the

21   action on application of a party "upon being satisfied that the issue involved in such suit or

22   proceeding is referable to arbitration under" a written agreement to arbitrate between the parties.

23   9 U.S.C. § 3; *see also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985) (holding

24   "shall" in statute makes stay mandatory on satisfaction of court).  To determine a dispute is

25   referable to arbitration under the parties' agreement, the court must determine "(1) whether a

26   valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the

27   dispute at issue."  *Kilgore v. KeyBank Nat. Ass'n,*  718 F. 3d 1052, 1058 (9th Cir. 2013) (quoting

28   *Chiron Corp. v. Ortho Diagnostic Sys. Inc.*, 207 F. 3d 1126, 1130 (9th Cir. 2000)).

1   The FAA makes agreements to arbitrate valid and enforceable, "save upon such

2   grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 3.  This

3   savings clause was intended to preserve generally applicable state law contract defenses such as

4   unconscionability.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  State law

5   doctrines may not be applied in a way that disfavors or discriminates against arbitration

6   provisions.  *Id.* at 341.

7   III.   DISCUSSION

8   Morris CM's sole argument is that the arbitration clause as a whole is

9   unconscionable and thus unenforceable.  *See* Opp'n at 2–8.  Morris CM cites *Armendariz v.*

10  *Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000), for the proposition that

11  unconscionable provisions of the arbitration agreement render it entirely unenforceable.  At

12  hearing, Morris CM stood on its assertion that *Armendariz* controls the outcome here, even where

13  Morris CM has not specifically challenged the agreement's delegation provision.  While it is true

14  that state law contract defenses such as unconscionability may render an arbitration agreement

15  unenforceable under the FAA, *Concepcion*, 563 U.S. at 339, Wingstop correctly notes the

16  Supreme Court has substantially narrowed the application of the unconscionability defense, as

17  explained in *Armendariz* itself.

18   Wingstop responds that the arbitration clause expressly delegates the question of

19  enforceability of the clause to the arbitrator, including the resolution of defenses such as

20  unconscionability.  Reply at 1–3.  Wingstop specifically contends that under *Rent-A-Center,*

21  *West, Inc. v. Jackson*, 561 U.S. 63 (2010), Morris CM's failure to specifically challenge the

22  enforceability of the delegation provision leaves the decision of whether the arbitration provision

23  is unconscionable for the arbitrator to decide.

24   In *Rent-A-Center*, an employee opposed a motion to compel arbitration, arguing

25  the arbitration agreement he had signed was procedurally and substantively unconscionable.  *Id.*

26  at 66.  The employee's challenges rested on grounds the provision limited the number of

27  depositions, had a cost-sharing arrangement, and was one-sided in the claims subject to

28  arbitration.  *Id.* at 73–74. The arbitration agreement the employee had signed provided that "[t]he

5

1  Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to

2  resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this

3  Agreement including, but not limited to any claim that all or any part of this Agreement is void or

4  voidable." *Id.* at 66.  The Ninth Circuit below had held that where "'a party challenges an

5  arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to

6  the agreement, the threshold question of unconscionability is for the court.'" *Id.* at 67 (*quoting*

7  *Rent-A-Center, West, Inc. v. Jackson*, 581 F. 3d 912 (2009)).

8        The Supreme Court reversed.  Examining the filings, the Court concluded the

9  employee had never challenged the delegation provision specifically, only other portions of the

10 arbitration agreement.  *Id.* at 73–74.  The employee argued the challenged provisions rendered the

11 entire agreement to arbitrate invalid, including the delegation provision.  *Id.* at 74.  The Supreme

12 Court rejected this line of reasoning.  The Court held where there is "clear and unmistakable"

13 evidence of intent to arbitrate arbitrability, "unless [the employee] challenged the delegation

14 provision specifically, we must treat it as valid under § 2, and must enforce it under   §§ 3 and 4,

15 leaving any challenge to the validity of the Agreement as a whole for the arbitrator."  *Id.* at 70

16 n.1, 72.

17        This case is analogous to *Rent-A-Center*.  The arbitration provision at issue here

18 contains an express delegation to the arbitrator to determine "the validity and scope of the

19 arbitration obligation under this Section, which [Wingstop] and [Morris CM] acknowledge is to

20 be determined by an arbitrator and not by a court[.]"  Franchise Agreement at 42.  Morris CM

21 challenges the arbitration agreement as procedurally unconscionable on the grounds that (1) the

22 arbitration provision is a contract of adhesion and (2) the provision incorporates the AAA rules by

23 reference without providing the rules themselves to Morris CM, which made Morris CM unable

24 to determine its rights and obligations under arbitration at the time the agreement was signed.

25 Opp'n at 4–6.  Morris CM specifically claims the arbitration agreement is substantively

26 unconscionable in that it (1) restricts the right to discovery and (2) is unclear about which party is

27 obligated to pay the costs of arbitration.  *Id.* at 6–8.  As a result, it argues, "the arbitration

28 /////

6

provision is irreparably tainted, cannot be reformed by severing the numerous unconscionable provisions, and is therefore unenforceable." *Id.* at 8.

Just as in *Rent-A-Center*, the delegation provision in this case is "clear and unmistakable" evidence of the parties' intent to arbitrate arbitrability. The provision declares expressly that the question of the validity of the agreement, including the arbitration provision itself, is for the arbitrator. Morris CM's opposition is silent as to the delegation provision. At hearing, Morris CM confirmed it did not challenge the delegation provision specifically. It argues, as the plaintiff employee did in *Rent-A-Center*, that other aspects of the arbitration clause are unconscionable, rendering the arbitration clause entirely unenforceable. But given the similarity of facts, *Rent-A-Center* controls the outcome here to Morris CM's detriment.

A review of cases distinguishing or refusing to extend *Rent-A-Center* further supports the application of its rule. Courts have refused to apply *Rent-A-Center* in situations where there was no delegation provision, *Lopez v. American Express Bank*, *FSB*, No. CV 09-07335 SJO (MANx), 2010 WL 3637755 (C.D. Cal. Sept. 17, 2010); where the parties agreed California law controlled instead of the FAA, *Chin v. Advanced Fresh Concepts Franchise Corp.*, 194 Cal. App. 4th 704, 708–709 (2011); and where the arbitration agreement incorporated the AAA rules governing delegation into the agreement by reference, *Fuqua v. Kenan Advantage Group, Inc.*, No. 3:11-cv-01463-ST, 2012 WL 2861613, at *9 (D. Ore. April 13, 2012). In one instance, another judge of this court considered a plaintiff's argument that her agreement with AT&T to market wireless products and services to customers through her cell phone store, which included an arbitration provision, was unconscionable. *Madgrigal v. AT&T Wireless Servs., Inc.*, No. 1:09-cv-0033-OWW-MJS, 2010 WL 5343299, at *3 (E.D. Cal. 2010). The plaintiff in that case attempted to distinguish *Rent-A-Center* by pointing out the arbitration provision at issue was part of a larger contract, not a stand-alone arbitration agreement. *Id.* The plaintiff argued that by challenging the enforceability of the arbitration provision in the larger contract, she had satisfied the requirement to attack the delegation provision with specificity. *Id.* The court rejected that argument, observing "*Jackson* did not turn on the fact that the agreement was a 'stand-alone' arbitration agreement." *Id.*

7

1         Given *Rent-A-Center*'s congruity with this case, the court must apply its rule here.

2 Because Morris CM has not specifically challenged the validity of the provision delegating

3 authority to the arbitrator to determine the validity of the arbitration agreement, its arguments in

4 opposition are properly resolved by the arbitrator.

5         Wingstop clarified at hearing that it seeks a stay only as to plaintiff's arbitrable

6 claims and that it wishes to proceed with its intellectual property claims in this court.  In the

7 months that have followed, Morris CM failed to file an answer to the intellectual property claims,

8 defaulted, and Wingstop moved for a default judgment, with the magistrate judge's findings and

9 recommendations pending before this court.  Given this history, further briefing on the

10 severability of these claims is not necessary.

11         IV.    <u>CONCLUSION</u>

12         For the foregoing reasons, the court GRANTS Wingstop Franchising LLC's

13 motion to stay plaintiff's arbitrable claims under 9 U.S.C. § 3, pending resolution of the parties'

14 arbitration.

15         The preliminary injunction issued by this court remains in effect.

16         This order resolves ECF No. 9.

17 DATED: September 10, 2020.

18

19

20                   CHIEF UNITED STATES DISTRICT JUDGE

21

22

23

24

25

26

27

28

8